Wright, J.,
delivered the opinion of the Court.
On the 19th of December, 1853, the Legislature established a Court in the city of Memphis, to be composed of one Judge, to be elected by the qualified voters of the 5th, 13th and 14th civil districts of Shelby county. He was to hold his office for eight years, and reside in said civil districts.
The style of said Court was the Criminal Court of Memphis. It was to be held in said city, and have exclusive original jurisdiction of all crimes and misdemeanors committed against the laws of the State within said civil districts; all authority over sa.id offences being taken away from the Circuit Court of Shelby county, and the Common Law and Chancery Court of the city of Memphis.
It was made the duty of the sheriff, of Shelby county -to attend the said Criminal Court, and perform all the duties required of him in relation to such criminal business as might come before said Court — he being en *653 titled to the same fees and compensation therefor as for like services in other Courts.
The said Court was to have no jurisdiction beyond the limits of said civil districts; and the expenses of providing a house in which to hold the same, and of the jurors in said Court, were required to be paid by the corporation of the city of Memphis.
Afterwards — at the same session of the Legislature— the charter of .said city was amended, and the collector of the county revenue for the county of Shelby, was required to pay to the Mayor and Aldermen of said city, the county tax thereafter collected within the limits of said city; and they were to have the fines and forfeitures of the Common Law and Chancery Court of the city of Memphis, and of all other Courts which might thereafter be held in said city; and the said Mayor and Aldermen are required to defray all the expenses incident to the holding of all such Courts.
They have power given them to provide for the erection of all buildings necessary for the use of the city, for the arrest and confinement until trial of all vagrants, rioters, or disorderly persons within the limits of the city; and to authorize the arrest and detention of all persons violating any ordinance of the city.
The City Recorder is declared to have exclusive original jurisdiction of all offences arising under any violation of the provisions of the city charter, or breach of any ordinance of the city.
In September, 1855, William I). Grilmore, then being the sheriff of Shelby county, filed his petition in the Circuit Court of said county, stating that said Mayor and Aldermen of the city of Memphis, had built a *654 good jail in said city, out of the common public funds of the city, and had set apart the ground floor, or basement story, of the west end of said jail, for a calaboose to imprison offenders against the city laws and ordinances, and the remainder of said jail — including all above the entrance floors on the east end — was, by them, set apart for the imprisonment of persons charged with crimes and misdemeanors against the laws of the State, and for the accommodation of the jailer; and that there was no other jail, or safe place, to keep the prisoners committed to his charge, as sheriff, within the jurisdiction of said Criminal Court.
It wras further stated, that the said Mayor and Aldermen of the city of Memphis, and Thomas B. Mynott, City Marshall, and J. S. Dyer, Deputy Marshall, held possession of said jail and all parts of tl^e same, adversely to the petitioner, and his right to the possession and control of the same; and that they have confined in said jail persons for offences against the State, and hold them without any authority from the petitioner, or responsibility to him or the State for their safe-keeping; and that they have ousted petitioner of his possession and control of said jail, for the safe-keeping of prisoners committed to his charge, and assume to actúas jailer in his stead, against; his wish, and in violation of his right and franchise as sheriff.
The prayer of the petition was for a writ of mandamus, and that the petitioner, as sheriff, might be restored to the possession of all that part of .said jail so set apart for the safe keeping of offenders against the laws of the State, and for the accommodation of the jailer.
*655 An alternative mandamus was issued and served upon the defendants.
In their answer, the facts stated in the petition are, in substance, admitted. They, to be sure, state, and the proof shows, that the sheriff has at all times, been allowed free access to the jail and the prisoners confined there for offences against the laws of the State, and to use the said jail for the confinement of said prisoners, and to remove them at pleasure; but this is stated and claimed as matter of favor to the sheriff, and not of right in him; and that the Mayor and Aldermen of the city of Memphis are the absolute owners of said jail, and the keepers of the same; and as such, have the right, at their will, to exclude the sheriff and the State’s prisoners therefrom. And the record shows they have, accordingly, appointed the jailer, and have the entire control of the jail and the keys thereof.
The Circuit Judge dismissed the petition, and the plaintiff has appealed in error to this Court.
If this be regarded as a legal prison, and the sheriff has the right claimed by him, it will hardly he denied that the writ of mandamus is the proper remedy. It is laid down as a rule, that, in general, where a man is refused to he admitted, or wrongfully turned out of any office, or franchise, that concerns the public, or the administration of justice, he may be admitted, or restored by mandamus. 5 Bac. Ab. (Title Mandamus C.,) 263. The rule has been applied to the case of a constable. 5. Bac. Ab., 264.
Heither can it be maintained that, in this particular case, the injury to the sheriff is insufficient to authorise the writ, since he has been, virtually, refused all legal *656 authority and control over the jail; and the custody and keys thereof have, by the Mayor and Aldermen of the city of Memphis, been placed in the hands of a jailer of their own appointment.
The next question is, whether anything has transpired since the institution of this suit to abate it ? The official term of Gilmore, who was then the sheriff, has expired, and though Felts, his successor, became a party by an amended petition, yet his term has also expired, and his successor been elected. The record does not disclose any personal or individual interest, either in Gilmore or Felts; but the suit appears to have been prosecuted by them in their official character of sheriff, for the time being, for the public benefit, and not as individuals.
In such a case, the law regards the name of the office, and not the adjunct'name of the individual; and in it are implied all the successors that shall ever be to it, each successor, for the time of his term, being the real plaintiff to support the action, whether described by name, or not. And if one die, or his term of office expire, before the determination of the suit, it shall be continued by his successor, and will not abate. 1 Hay., 144; Polk v. Plummer, et al., 2 Hum., 500.
We are of opinion, therefore, that the present sheriff of Shelby county may take the benefit of this suit.
We are next to inquire whether this is a legal prison for the safe custody of all persons charged with offences cognizable in the Criminal Court of Memphis; and whether the State has not the right sd to regard and use it ?
In England, jails are said to be of such universal *657 concern to the public, that none can be erected by any less authority than by act of 'Parliament. All prisons, or jails, belong to the King, although a subject may hare the custody or keeping of them. This is so, pro bono publico; and, therefore, they were to be repaired at the common charge. A subject' was not. allowed to have a prison of his own. And, therefore, where the Lord of a franchise, or some other than the sheriff, as was sometimes the case, by special custom or grant, had the custody of a prison, it was the King’s prison. Even a house of correction, is a jail, to which a prisoner charged with high treason may be committed. 4 ,Bac. Ab., (Title Gaol and Gaoler, A. and B.,) 28, 29; 4 Com. Dig.; (Title Imprisonment, A.,) 619; 8 Term A., 172.
In Tennessee, jails are usually built by the County Courts, out of funds in the County Treasury; but the Legislature may authorize them to be constructed by- the towns and cities; and unless they be, by law, restricted to the confinement of a particular' class of offenders, it cannot, we apprehend, be questioned, that, upon common law principles,- .they will become the public prisons of the State, to be used for the safe custody of offenders; and it does not lie with any county, town, or city, to exclude the State and its proper officers therefrom.
Here there is no such restriction. On the contrary, it seems to me, from the scope and language of the acts creating this Court and amending the city charter, it was intended that there should be a jail in the city of Memphis, as well for the safe custody of offenders against the State laws, as the city ordinances. How else could public justice be administered, or the Criminal *658 Court be beld with any safety or -convenience ? It can •not be supposed that the multitude of criminals whose ■offences might come within the cognizance of that Court, ■were to be kept without a jail, or .be confined in- the county jail at Raleigh — a distance of nine miles from the -city — and from thence taken, and restored, as they should ■be needed, from day to day, during the sessions of the -Court.
It is true, it is not said, in so many words, that the Mayor and Aldermen of Memphis shall build a jail; but what is sufficiently implied meed not o be expressed.
The Court is to sit in the city. ’Its jurisdiction is •confined to the three civil districts above mentioned, which embrace the city. The sheriff of the county is .the sheriff of that court. The Mayor and Aldermen of Memphis are to furnish a court-house, and be at all •the expenses of that and the other Courts of the city: ¿may erect all buildings necessary for the use of the .city, and provide for the arrest and confinement of. all offenders against the city laws and ordinances; and are •t.o have the county tax collected within the city — the •fines and forfeitures of its Courts, and the revenue from ■license granted to its inhabitants.
We are not at liberty, therefore, as we think, to hold this to be any other than a public jail — to be «used as other prisons. The Mayor and Aldermen have so interpreted the law, and, as we think, properly. They ’.have erected the jail out of the public funds of the ■city, and have dedicated it, chiefly, to the use of the ,.S.tate, in the confinement of offenders against its laws.
The only remaining question is, whether- the sheriff *659 of Shelby county, by law, is entitled to be the keeper of this jail ? And we are of opinion he is. At the common law, the custody of jails, of right' belonged, and was annexed, as an incident, to the office of sheriff. The safe keeping of prisoners involved much peril and responsibility, and it was esteemed unsafe to commit them to the care of any less a personage than the sheriff himself, whose office was one of very ancient .date, and of great trust and authority, and who might bring to his assistance the posse eomitalys, or power of ■the county.
He had the appointment of the keepers of jails, and was to put in such for whom he would answer; for being an immediate officer of the King’s Courts, and amenable for escapes, and subject to amercements if he had not the bodies of prisoners in Court, it was esteemed against all reason, that another should have the keeping and custody of the jail. His right ■was favored, and could only be abridged by act of Parliament. Even the King’s grant to another, of the custody of prisoners, was, after 5 IL, 4, void. The care of Gaols, cited in Milton’s case, 460, 84 .a; 4 Bac. Ab., .{Gaol and Gaoler, A.,) 29.
These rules of law and principles govern the present case. The sheriff’s common law right can-nQt be abridged, or given to another, unless the purpose so to do be clearly expressed by the Legislature; and this is not done here. The intendment of the law is in favor of the sheriff’s right; and public policy requires that he should be the keeper of all prisons. It would be unsafe to commit só important a trust to another, unless for some imperative reason.
*660 As to that portion of the jail set apart for the confinement of offenders against the eity laws and ordinances, we say nothing, the ease calling for no remark as to that.
The judgment of the Circuit Court will be reversed, and a peremptory mandamus will issue according to th« prayer ©f the petition.